UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS HENSLEY, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 16 C 2715 ) |
| SHERWIN MILES,[1] | ) Judge Sara L. Ellis ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER

Petitioner Carlos Hensley, currently incarcerated at Stateville Correctional Center, is serving a forty-five-year sentence for first degree murder and consecutive twenty-five and seventeen-year sentences for discharging a firearm in the commission of the murder and for attempted murder respectively. Hensley petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court reaches Hensley's claim of ineffective assistance of counsel, but Hensley fails to show that the state court unreasonably applied clearly established law. The Court finds the remainder of Hensley's claims procedurally defaulted or non-cognizable. Therefore, the Court denies Hensley's petition for a writ of habeas corpus.

## BACKGROUND

The Court presumes that the state court's factual determinations are correct for the purpose of habeas review because Hensley has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

---

[1] The Court substitutes Sherwin Miles, presently the acting warden at Stateville Correctional Center, as the proper Respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court thus adopts the state court's recitation of the facts and begins by summarizing the facts relevant to Hensley's petition.

## I. Hensley's Trial and Conviction

A shooting on May 24, 2008, killed Kiana Green and injured Christopher Smith. Prosecutors charged Hensley with first degree murder, attempted murder, and aggravated battery with a firearm in connection with that shooting. Hensley proceeded to a jury trial.

At trial, the evidence established that on the day of the shooting, Darius Henry and Hensley's brother, Roselle, argued over a dice game near Hensley's house, with Hensley eventually interjecting on his brother's behalf. Hensley, displaying a .357 Magnum, told Henry to go get his gun. Henry left and returned with Ian Rush and Delorean Standley, both of whom had guns. Rush and Standley fired at Hensley, and Hensley returned fire.

In the time between the initial fight over the dice game and Henry returning with Rush and Standley, Bernard Norvell and James Davis arrived at Hensley's house, where Hensley pointed the .357 at Norvell. Norvell told Hensley to "stop playing like that." *People v. Hensley*, 22 N.E.3d 1175, 1181, 2014 IL App (1st) 120802, 387 Ill. Dec. 522 (2014). When gunshots were fired, Davis and Norvell ran through a gangway, but Hensley returned fire.

Sometime after, Norvell drove his wife's car around the area with Hensley in the passenger seat and Davis in the backseat. They eventually saw a maroon, four-door Cutlass, a car Standley supposedly drove, and assumed the two occupants of the vehicle were Henry and Standley. But Standley had traded cars with Smith for the evening, with Green in the car on the passenger side. Upon seeing the car, Hensley remarked that "there they go." *Id.* at 1182. Hensley asked Norvell to pull alongside the car, but Norvell refused. Hensley then got out of the

2

vehicle and walked up to the passenger side of Standley's car and fired a shot through the back window and five shots in the passenger side of the car. The shots hit Smith and killed Green.

Before trial, the State filed a motion to admit evidence of the dice game argument, fight, and resulting shootout that preceded the shooting of Smith and Green. The State argued that the evidence established Hensley's motive or intent and that the fight between Henry, Roselle, and Hensley was "inextricably linked" to the later shooting because it showed Hensley intended to kill Standley. *Id.* at 1180. The State also argued that ballistics evidence recovered from the scene indicated the shooter used a .38 or .357 handgun, and Norvell and Davis would testify that they saw Hensley with a .357 that day, proving identity. Hensley filed several motions *in limine* to exclude the other crimes evidence, arguing he acted legally in self-defense during the earlier shootout and that the State's retaliation theory was speculative and irrelevant. The trial court allowed the State to present the evidence, concluding "it is all one set of facts here." *Id.*

Also before trial, the State petitioned the court for a rule to show cause because Henry failed to appear in court in response to a subpoena. The State believed the police were looking for Henry in connection with an unrelated murder, but the police did not file charges or issue a warrant on that basis. Instead, police arrested Henry approximately a month later on the contempt of court warrant. At trial, Henry admitted he had been arrested for occupying a stolen car and that marijuana had been found in that car. On cross-examination, Hensley's counsel asked Henry, "you are under investigation or the subject of a murder investigation here in Chicago, aren't you?" *Id.* at 1183. Henry twice denied knowledge of any such investigation.

In addition to hearing the evidence set forth above about the events of May 24, the jury heard testimony about the occurrence witnesses' credibility. Davis admitted the State compensated him for travel and lodging costs and that he had a prior record. He also indicated

3

he had been drinking vodka the night of the shooting. Norvell acknowledged he had not been truthful when he first spoke to police and denied knowing who shot Green. He also admitted to having prior felony convictions and pending cases. Smith indicated that, although he drove to Trinity Hospital after the shooting, he did not initially report the shooting to police because he "wanted to take care of it" himself, or, in other words, kill Hensley. *Id.* at 1183. He also admitted to having prior convictions and to having smoked marijuana the night of the shooting. The parties stipulated that Smith's mother would have testified that, while he was recovering in the hospital, her son told her he did not know who shot him.

A forensic investigator and forensic scientist testified at trial as well. The investigator testified about the processing of the Cutlass, which had gunshot damage. He acknowledged that no physical evidence linked Hensley to the scene of the crime and the police had not recovered the gun. The forensic scientist testified that all the bullets were fired from the same weapon, either a .38 or .357.

Dr. Michel J. Humilier, who performed Green's autopsy, was no longer employed as a Cook County Medical Examiner at the time of trial. Dr. Ariel Goldschmidt testified in his place as an expert in forensic pathology, stating that a gunshot wound to the head killed Green and classifying the death as a homicide. Dr. Goldschmidt indicated he formed his own opinion after reading the autopsy report and reviewing photographs and hospital records. Dr. Goldschmidt was not present during Green's autopsy nor did he communicate with Dr. Humilier about the report. The State entered a certified copy of the autopsy report, dated July 7, 2011, into evidence, but this report did not go back to the jury. Prior to trial, Hensley filed a motion *in limine* to exclude Dr. Goldschmidt's testimony, arguing that allowing a substitute witness for Dr.

Humilier would violate his confrontation and due process rights. But the court denied Hensley's motion and allowed the State to present Dr. Goldschmidt's testimony.

After hearing the evidence, the jury found Hensley guilty of first degree murder, attempted murder, and aggravated battery with a firearm. The jury also found that Hensley personally discharged a firearm that proximately caused Green's death. Hensley filed a motion for a new trial, which the court denied. The court sentenced Hensley to forty-five years of imprisonment for first degree murder, twenty-five years for discharging a firearm during the murder, and seventeen years for attempted murder. Hensley requested that the court reconsider its sentence, which the court also denied.

## II. Direct Appeal

With the assistance of counsel, Hensley appealed to the Illinois Appellate Court, raising four issues: (1) the trial court erred in admitting other crimes evidence, with the State using the evidence to show Hensley had a propensity for gun violence; (2) the State failed to correct a witness' testimony and presented improper closing argument; (3) the State's alternate medical examiner's testimony violated Hensley's confrontation right; and (4) insufficient evidence existed to convict Hensley of attempted murder. He asked the appellate court to consider the first two issues under plain error review as well as in connection with a claim of ineffective assistance of counsel. He acknowledged plain error review also applied to the confrontation claim. On November 24, 2014, the Illinois Appellate Court affirmed Hensley's conviction.

Hensley then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, raising two issues: (1) the trial court erred in admitting other crimes evidence, and (2) the State's failure to correct a witness' testimony constituted prosecutorial misconduct. In a footnote, he also argued that counsel did not object to the State's misuse of the other crime evidence and so

5

contended that the Illinois Supreme Court should consider whether trial counsel provided ineffective assistance by failing to object. The Illinois Supreme Court denied Hensley's PLA on March 25, 2015. Hensley sought United States Supreme Court review; however, the Supreme Court denied his petition for a writ of certiorari on April 4, 2016.

### III.     State Post-Conviction Proceedings

Hensley, proceeding *pro se*, filed a federal habeas corpus petition with this Court on February 29, 2016. Hensley also filed a *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. § 5/122-1 on September 21, 2016. In his post-conviction petition, he argued (1) he is actually innocent of the crimes, and (2) his appellate counsel provided him with ineffective assistance. The trial court dismissed Hensley's post-conviction petition on December 16, 2016. Hensley filed a notice of appeal. His appointed appellate counsel sought to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987), stating that Hensley had no arguable bases for relief. The Illinois Appellate Court allowed counsel to withdraw and affirmed the denial of Hensley's post-conviction petition on December 21, 2018. Hensley did not file a PLA with the Illinois Supreme Court.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

**ANALYSIS**

Hensley presents the following claims in his petition for habeas corpus relief: (1) the trial court erred in admitting other crimes evidence, (2) Hensley received ineffective assistance of trial counsel based on the failure to object to the State's use of other crime evidence, (3) prosecutorial misconduct violated Hensley's due process right; (4) the testimony of the alternate medical examiner violated Hensley's confrontation right, and (5) insufficient evidence existed to convict Hensley of attempted murder. Respondent argues that the admission of other crimes evidence claim is not cognizable on federal habeas review and that the ineffective assistance of counsel claim based on the failure to object to the State's use of such evidence is foreclosed by the state court's ruling that the evidence was properly admitted. Additionally, Respondent argues that Hensley has procedurally defaulted the prosecutorial misconduct, confrontation right violation, and insufficient evidence claims because an independent and adequate state ground exists for their dismissal or Hensley did not raise them through one complete round of state court review.

**I.    Admission of Other Crimes Evidence (Claim 1)**

Respondent argues that Hensley's claim concerning the admission of other crimes evidence is not cognizable on federal habeas review. "[I]t is not the province of a federal habeas

7

court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene."). Whether evidence in a criminal trial was properly admitted is a question of state law; therefore, this Court cannot review it in a federal habeas petition. *Stomner v. Kolb*, 903 F.2d 1123, 1128–29 (7th Cir. 1990); *United States ex rel. Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir. 1985).

Hensley cites *Michelson v. United States*, 335 U.S. 469, 69 S. Ct. 213, 93 L. Ed. 168 (1948), to demonstrate that this Court can review the admissibility of other crimes evidence. But in *Michelson*, the Supreme Court addressed the use of other crimes evidence in a federal prosecution, whereas the present case involves a state prosecution governed by state evidentiary rules. "Violations of state evidentiary rules . . . 'may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Searcy*, 768 F.2d at 910 (quoting *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979)). Although Hensley mentions a due process violation in his petition, he does not elaborate or suggest how the alleged evidentiary error rises to a constitutional violation. Because it is not the place of the federal courts to review state court determinations of state law questions, *Estelle*, 502 U.S. at 67–68, the Court cannot consider Hensley's challenge to the admission of other crimes evidence at his trial.

## II.     Ineffective Assistance of Counsel (Claim 2)

Hensley claims his counsel provided ineffective assistance by failing to object to the State's use of the other crime evidence. Respondent argues that this claim does not have merit because the Illinois Appellate Court concluded that the other crimes evidence was properly admitted as a matter of Illinois law, which defeated any ineffective assistance of counsel claim.

To succeed on a claim of ineffective assistance of counsel, Hensley must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. For the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This means a "substantial," not just "conceivable," likelihood of a different outcome in the case. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The Court need not address both prongs of the *Strickland* test if one provides the answer. That is, if the Court determines that the alleged deficiency did not prejudice Hensley, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In reviewing the Illinois Appellate Court's decision, the Court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (quoting *Cullen*, 564 U.S. at 188).

Hensley argues the State used the other crimes evidence to show he "possessed a bad character and a propensity toward gun violence," Doc. 1 at 7, and that counsel's failure to object to such use constitutes ineffective assistance of counsel. For Hensley's claim to succeed, he must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). While trial counsel did not object to the State's use of the evidence at trial, he did attempt to bar the use of the other crimes evidence through a motion *in limine*, which the trial court rejected, concluding the evidence was admissible. *Hensley*, 22 N.E.3d at 1180. "An ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). "If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted." *Id*. The Illinois Appellate Court concluded that the trial court properly admitted the evidence, meaning Hensley's claim of ineffective assistance failed. *Hensley*, 22 N.E.3d at 1187–89. This accords with *Hough*'s explanation of the viability of claims for ineffective assistance based on counsel's failure to object. *Hough*, 272 F.3d at 898. And because the Court cannot review the appellate court's evidentiary admissibility decision, that decision stands as a bar to Hensley's ineffective assistance claim. *See Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010) ("[W]e will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless."); *Aguallo v. Atchison*, No. 12 C 48, 2013 WL 6009262, at *13 (N.D. Ill. Nov. 12, 2013) (state appellate court's determination that evidence was admissible meant that trial counsel's failure to object to that evidence did not constitute ineffective assistance). The

Court therefore cannot find that the Illinois Appellate Court unreasonably applied *Strickland* in concluding that Hensley's claim had no merit.

III. **Procedurally Defaulted Claims**

Respondent argues that Hensley has procedurally defaulted his remaining claims. A petitioner can procedurally default a federal claim in two ways: (1) if the petitioner failed to exhaust the claim on one complete round of state court review, or (2) if the state court decided the claim on a state procedural ground. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). The Court considers these bases for procedural default below.

A. **Prosecutorial Misconduct (Claim 3)**

The Court cannot review a claim decided by a state court where "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Respondent argues that Hensley defaulted his claim of prosecutorial misconduct because the Illinois Appellate Court concluded he had waived the claim, which provides an independent and adequate state ground to preclude this Court's review. Waiver amounts to an independent and adequate state ground for purposes of barring federal habeas review. *See Richardson v. Lemke*, 745 F.3d 258, 271–72 (7th Cir. 2014); *Thompson v. Jungwirth*, No. 04 C 6059, 2008 WL 4549464, at *5 (N.D. Ill. Apr. 8, 2008).

Here, Hensley did not object to the prosecutor's failure to correct the alleged false statements made by a government witness during cross-examination or to the prosecutor's statements during closing argument at trial or in his motion for a new trial. Instead, Hensley raised the issue for the first time on direct appeal, conceding that he did not properly preserve this claim for appellate review. *Hensley*, 22 N.E.3d at 1186. The Illinois Appellate Court

acknowledged that failure and instead considered his claim under the plain error doctrine. Despite the appellate court's consideration of whether plain error occurred, this "limited review does not constitute a decision on the merits" because the court reviewed the claim "for plain error because of a state procedural bar," here, waiver. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010); *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Therefore, the state court applied an independent and adequate state ground to the prosecutorial misconduct claim, barring the Court's consideration of that claim. *See Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (petitioner did not raise *Apprendi* claim at sentencing and state court found no plain error, providing an independent and adequate state ground that precluded federal habeas review).

B.   **Confrontation Violation (Claim 4) and Sufficiency of the Evidence (Claim 5)**

To avoid procedural default, a petitioner must fairly present his claims through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). Fair presentment means the petitioner "must raise the issue at each and every level of the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004). In Illinois, this includes appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts at each level of review and the opportunity to raise that claim has subsequently passed, the petitioner has procedurally defaulted the claim and it is not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Respondent argues Hensley procedurally defaulted his claims concerning a confrontation violation and the sufficiency of the evidence because he did not include them in his PLA.

Hensley asserted the confrontation right claim on appeal; however, he did not assert the claim in his PLA to the Illinois Supreme Court. Similarly, Hensley raised the sufficiency of the evidence claim on appeal but did not include the claim in his PLA. A petitioner must fairly present his claims through one complete round of state appellate review, *O'Sullivan*, 526 U.S. at 845, which includes the filing of a PLA in Illinois, *Duncan*, 740 F. Supp. 2d at 945. Because Hensley failed to include the confrontation right and sufficiency of the evidence claims in his PLA, he has procedurally defaulted these claims.[2] *Lewis*, 390 F.3d at 1025.

### C. Exceptions to Procedural Default

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice

---

[2] Respondent also argues that the Illinois Appellate Court addressed his confrontation claim under plain error review, providing yet another reason for finding his claim procedurally defaulted based on an independent and adequate state ground. As discussed in connection with the prosecutorial misconduct claim, the appellate court's consideration of a claim under plain error analysis based on waiver also bars a federal reviewing court from addressing that claim. *See Kaczmarek*, 627 F.3d at 592. Therefore, the existence of an independent and adequate state ground provides an alternate basis for finding Hensley procedurally defaulted his confrontation claim.

13

exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

Hensley has not provided this Court with any argument to excuse the procedural defaults of his claims. Therefore, the Court will not consider his defaulted claims. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (petitioner not entitled to consideration of his procedurally defaulted claims where he did not present any argument to excuse the defaults).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The

question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds no showing of a substantial constitutional question for appeal because reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Hensley's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Dated: August 13, 2019

_____
SARA L. ELLIS
United States District Judge